J. W. Bass & Co. Plaintiffs in Error, vs. R. P. Upton, Defendant in Error.

The Lien of a Warehouseman upon goods for Warehouse Charges, and the Lien of a Warehouseman upon goods for Money advanced for freight charges, depend upon different principles of law.

The Defendants, in their answer, set up in an intelligible manner two distinct grounds of defence, but did not allege them in two distinct counts or in two separate statements: the Plaintiff demurred to one ground of defence and replied to the other; —Held, That the Plaintiff might waive the irregularity in the Answer, and that the Demurrer and Reply were properly pleaded.

A Warehouseman who receives goods from a Steamboat in the carrying trade, and pays to such boat the freight charges, does not by reason of such payment obtain a lien upon the goods.

A Steamboat in the carrying trade, that receives goods and contracts to carry them to a place stated, is not entitled to freight charges; and no lien attaches to the goods in favor of the boat until the contract is performed, unless it shall appear that the performance of such contract became impracticable.

WRIT OF ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

The Opinion in this cause contains a sufficient history to enable us to understand the issues presented by the pleadings.

The following are the points and authorities relied upon by the Plaintiffs in Error:

The Court below erred in sustaining the demurrer to a portion of Defendants' answer; such demurrer should have been overruled, because,—

*First.* It was interposed to only a part of an entire defence. The defence interposed is, that the Defendants had a lien upon the property: and it is but *one* defence. The items of charges upon which the lien is founded cannot be considered or treated as separate defences. If any of them were such as could not create a lien, the Plaintiff should proceed by motion to strike out such items. If none were such as to create a lien a demurrer was the proper remedy, but it should have been to the entire defence. *Revised Stat. p.* 338, *sec.* 69: *and Amendments to Rev. Stat. p.* 9, *sec.* 26; 3 *How. Pr. Rep.* 410, *Manchester et. al., Superintendents, &c. vs. Storrs et. al.;* 4 *ibid,* 226, *Dur-*

*kee vs. The S. & W. Railroad Co.;* 4 *ibid,* 373, *Slocum vs. Wheeler;* 4 *ibid,* 413, *Cobb vs. Frazer;* 6 *ibid,* 383, *Smith vs. Brown; Van Santvoorde's Pl.* (2d *Ed.*) 683 *et. seq. and* 700.

*Second.* The Defendants were entitled to and had a lien for their advances as well as for their labors bestowed upon the property.

The goods were delivered by the Plaintiff to Gilbert at Pittsburgh, to be transported for the Plaintiff to St. Anthony, or to the highest point attainable on the Mississippi River, between St. Paul and St. Anthony. Gilbert consigned them to the Defendants at St. Paul by the steamboat "James Lyon," with instructions to the Defendants to pay the charges of the "James Lyon": and the Defendants received the goods and paid the charges, pursuant to such instructions. Gilbert acted within his authority. The "James Lyon" had a lien for her charges: and when she transferred, or passed over to the Defendants the bill of lading or letter of Gilbert, with the goods, and the Defendants paid those charges, the lien was transferred also.

Gilbert was acting for, and as the agent of the Plaintiff: and the Plaintiff admits his authority to consign to the Defendants by paying a portion of the Defendants' charges.— *Everett vs. Coffin & Cartwright,* 6 *Wend.* 603; *Judah et. al. vs. Kemp,* 2 *John. Cases,* 411 ; *see also Opinions in Salter vs. Everett, in* 15 *Wend.* 474 *and* 20 *Wend.* 267 ; 2 *Lord Ragmond,* 866 ; 2 *Saunders' Rep.* 47 "f"; 4 *J. R.* 103; *Angell on the Laws of Carriers,* (2d *Ed.*) *sec's.* 365 *to* 368 *inclusive.*

The following are the points and authorities relied upon by the Defendant in Error :

The Court below properly rendered judgment for the Plaintiff below, because,—

*First.* The answer of the Defendants below sets up two separate and distinct defences : to one of which the Plaintiff might properly demur, and reply to the other. *Rev. Statutes Minnesota Territory, Am'd'ts, p.* 9, *sec.* 26 ; 3 *C. R.* 59 ; *S. C.* 4 *How. Pr.* 373 ; 5 *How. Pr.* 5 ; *ib.* 206 ; 3 *C. R.* 215 ; 2 *C. R.* 49 ; 8 *How. Pr.* 193 ; 12 *Barb. S. C. Rep.* 9. And because,

*Secondly.* The issue of fact could not properly be decided otherwise than in favor of the Plaintiff below, upon the facts admitted of record by the Defendants below ; and because,

*Thirdly.* The demurrer to part of the answer of the Defendants below was properly sustained : inasmuch as, ·

*Fourthly.* No facts appear in said answer showing that either the steamer "Falls City," or the master, J. B. Gilbert, (in said answer mentioned), ever had a *lien* upon the goods mentioned in the complaint and answer in this action, or ever had authority to create a lien thereupon. 5 *Cush.* 137 ; 2 *Merivale*, 404 ; 6 *Mass.* 422 ; 5 *T. R.* 604 ; 1 *East.* 335 ; 15 *Mass.* 396 ; 6 *East.* 27, (*note*) ; 5 *Taunton*, 642–5 ; *Story on Agency*, sec. 360, *and cases there cited; ib.* 372; *Strange*, 1178; 6 *East.* 17 ; *ib.* 538 ; 1 *Doug.* 1. And inasmuch as,

*Fifthly.* Any lien which the "James Lyon" (mentioned in said answer) may have had on said goods for payment of freight money thereon, was extinguished by payment of said freight money and the delivery up and surrender of the possession of said goods to Defendants below by said "James Lyon." 5 *T. R.* 604; 6 *East.* 27 ; *Story on Agency*, sec. 367, sec. 372.

*Sixthly.* No lien is given at common law nor by statute to warehousemen on goods received by them, to secure re-payment of freight money by them advanced thereon : and *no custom of the trade* establishing such lien is pleaded in this action. 5 *Taunton*, 645 ; 2 *Merivale*, 404 ; *Sess. Laws M. T.* 1855, *p.* 60, *chap. XVI. sec.* 22 ; 11 *Barb. S. C. Rep.* 120.

BRISBIN & BIGELOW, Counsel for Plaintiffs in Error.

GEO. A. NOURSE, Counsel for Defendant in Error.

*By the Court*—SHERBURNE, J.—This is an action in the nature of replevin and is brought into this Court upon a demurrer to the answer. In order to understand the grounds of the decision, it becomes necessary to look at the form, as well as the substance, of that portion of the answer, following a general denial, which is in the following language:

"The Defendants further answering allege, that they are warehousemen, doing business as such in the City of St. Paul, and were so doing business during and throughout the year 1855, and that while the Defendants were doing business as aforesaid, one J. B. Gilbert, was the master of a certain steamboat known as the Falls City, and that during the time aforesaid, the Plaintiff delivered to the said J. B. Gilbert, master

as aforesaid, at Pittsburgh, the goods and property mentioned and described in the complaint, to be transported for the Plaintiff to the City of St. Anthony, or to the highest point on the Mississippi River attainable, between the City of St. Paul and the said City of St. Anthony. And the Defendants aver, that while the said J. B. Gilbert was lawfully in the possession of the said goods and property, he delivered them to and upon a certain steamboat called the James Lyon, to be transported by the said steamboat to the said City of St. Paul.

" And the Defendants further allege that the said Gilbert, lawfully possessed of the said goods and property, consigned the same to the Defendants at St. Paul, and authorized and directed the Defendants to receive and store the said goods and property in their warehouse at St. Paul, and also authorized and directed the Defendants to pay to the said steamboat James Lyon, her charges for transporting the same, namely, the sum of one dollar per hundred for each hundred weight of the property so transported.

" And the defendants allege that afterwards, and on or about the 30th day of June, 1855, the said steamboat James Lyon, delivered to the Defendants at their warehouse aforesaid, the property mentioned and described in the complaint, and being of the weight of 122,794 pounds, and demanded thereon account as her charges for transporting the same, the sum of eleven hundred and sixty-six dollars and fifty-five cents. And the Defendants aver that thereupon and in pursuance of and conformity to the authority and direction aforesaid, they received the said property and goods, and paid to the said steamboat the sum of eleven hundred and sixty-six dollars and fifty-five cents.

" And the Defendants aver, that as such warehousemen they bestowed certain work and labor upon and attention to the said goods and property, in receiving, carrying and storing the same, and that the receiving, carrying and storing of the goods and property, was fully worth the sum of one hundred and seventeen dollars.

"And the Defendants allege that upon the premises herein contained the Defendants, as warehousemen, acquired and had a lien upon the goods and property mentioned to the extent of

the sum paid as aforesaid to the said James Lyon, and the labor and attention bestowed upon the same in receiving, carrying and storing as aforesaid; and Defendants aver that from the time the said property was received as aforesaid, until the commencement of this action, it remained in the possession of the Defendants.

" And the Defendants further aver that the Plaintiff has not paid the sum chargeable as aforesaid, upon the said property, nor any part thereof, except the sum of seven hundred and eighty-three dollars and fifty-five cents, and that there was due and unpaid thereon, at the time of the commencement of this action, the sum of five hundred dollars.

" And the Defendants further answering, aver that it is the common and universal custom of warehouseman in the city of St. Paul, to charge for moneys paid out as herein aforesaid, the sum of three per cent. per month, and that the Plaintiff knew of this custom, and dealt with the defendants with full knowledge thereof.

" Whereupon the Defendants ask that the Plaintiff be adjudged," &c.

The Defendant in Error demurs to that portion of the answer commencing with the words " and that while the Defendants were so doing business as aforesaid," and ending with the words, " and paid to the said steamboat the sum of eleven hundred and sixty-six dollars and fifty-five cents."

Also to that portion of said answer commencing with the words " and the Defendants allege that upon the premises," and concluding with the words " to the extent of the sum paid as aforesaid to the said James Lyon." Also, to that portion of said answer commencing with the words, " and the Defendant " further answering aver, that it is the common and universal " custom," and ending with the words " with full knowledge thereof," to the remaining part of the answer, the Defendants in Error has interposed a reply—the intention being, apparently, to demur to that portion of the answer which claims a lien for the money advanced to the steamboat James Lyon, and to reply to that portion which claims a lien on account of warehouse charges.

The first point made by the Plaintiffs in Error is that there

is but one defence set up in the answer, and that the law does not authorize both a reply and demurrer to the same defence, nor a reply to a part and demurrer to the remainder. Or if it should appear that there are two defences in the answer, still they are not separately stated, and the objection still remains. And that in that case the Plaintiff should have corrected the pleadings by motion.

There can be no doubt that there are two distinct grounds of defense set up in the answer. The Plaintiffs in Error claim a lien upon the goods; first, on account of the advances made by them to the steamboat James Lyon; and second, for warehouse charges. That these liens depend upon separate and distinct principles of law, it requires no argument to prove, because even if the lien should be held good for both the advances and the charges, still they would necessarily be sustained, each upon a statement of facts, widely different from the other, and Upton should not be denied the right of testing each distinct statement of facts upon its own merits. There may be some doubt, whether Bass & Co., had a lien upon the goods as security for the payment of their warehouse charges. This, however, Upton does not deny, but in his reply to that portion of the answer, alleges payment. To that portion of the answer, claiming a lien for advances, he demurs, presenting an issue of law.

The objection is that the form of the answer does not warrant both a demurrer and reply, even if it contain two defences. This question we propose to consider. A demurrer to an answer is authorized by section 26, of the amendments to the Revised Statutes, page 9, in the following language: "The "Plaintiff may demur to one or more of several defences or "counter claims, and reply to the residue." This language, in itself considered, does not confine the Defendant in Error, within the narrow limits contended for by the Plaintiffs. The authority to demur is given in its broadest sense, and we must have reference to the rules which existed prior to the Code, to guide us in attempting to arrive at a just and reasonable interpretation of its intention and meaning. It may be necessary in particular cases to change the rules of law which formerly prevailed, even in cases in which the Code is silent upon the

subject; but it can only be so, when the provisions of the Code are so inconsistent with the rules of common law, that both cannot stand. In such case, the Code must prevail. But a comparison of the two, upon the question now before us, will show no such inconsistency. The right to demur is preserved. It may be to one or more defences. Here the attempt is to demur to one defence. Was this defence so stated as to admit of a demurrer? It cannot be pretended that there are two separate and distinct formal counts. But it will be seen that the statement of facts on which it has been said the two defences rest, are separately stated and free from that confusion which would be likely to mislead the opposite party or the Court. It is not even suggested that either party has been misled by the informality referred to, nor that the real and proper issues have not been fully presented and heard. The objection would not have prevailed before the adoption of the Code. A demurrer at common law was either to the whole or a part of the declaration, and this rule equally applies to one count, part of which is sufficient, and the residue is not, *when the matters are divisible in their natures. See Chitty's Pleadings, vol.* 1, 577.

Has the rule of law applicable to the case been changed by the Code? The counsel of the Plaintiffs rely considerably upon sec. 69 of the Revised Statutes on page 338, requiring that each defence shall be separately stated. It may be reasonable to presume that the intention of this provision is, that there shall be as many distinct counts as defence; and it has already been said that the answer does not, in form, contain two distinct counts. This defect might probably have been corrected on motion of the adverse party; but instead of doing so, he has demurred and replied as he would have done if the two defences had been in separate and distinct counts. It by no means follows, that because the Statute requires defences to be separately stated, that such an error as appears in this answer, may not be waived by the Defendants. Formerly, no more than one defence could be interposed to the declaration, or to *the same part of it*, but the error was cured either by a reply or answer to each defence or by general demurrer. *See Introduction to Story's Pleading,* 37 *and cases cited.*

But the necessity of stating defences separately is not new in our Code. It has always been required. Our Code does nothing more than affirm the law and practice in this respect, which existed at the time it was enacted. At common law, but one defense could be pleaded, but the Statute of 4 Ann, authorizing more than one, required that each ground of defence, should be stated in a separate plea, as at common law. *See Gould's Pleading*, 429, *Law's Pleading*, 131, and 1 *Chitty's Pleading* 512-13, and such has, with a few exceptions, been the practice to the present time.

I do not think the authorities cited by Counsel for the Plaintiffs in Error support the objection. The case of *Manchester vs. Storrs and others*, 3 *How. Prac. Reps.* 410, came before the Court on a demurrer to a part of a complaint. When the cause was heard, the Statute Provisions of New York (since amended) required that a demurrer should be to the whole complaint. The point, therefore, before the Court, was entirely different from the one raised here.

In *Durkee vs. R.R. Company*, 4 *How. P. Reps.* 226, there is a demurrer to a complaint, because it contained three causes of action in the same count; and the causes were such, as could not, at common law, have been united in the same declaration, even if in distinct counts. There can be no doubt that it was bad on demurrer, and that the decision was right and just.

In *Slocum vs. Wheeler*, 4 *How. Practice Reports* 373, the Court merely holds that the Defendant cannot, at the same time, demur to and answer the same cause of action. I am not aware that any other rule is contended for in this cause.

In the case of *Cobb vs. Frazer*, same book 413, it is held that a demurrer will not lie to a part of an entire defence. But in the case at bar, we hold that the answer contains two distinct grounds of defence. The authority is not, therefore, in point.

The next case cited is that of *Smith vs. Brown and others*, 6 *How. Prac. Reps.* 383. This was a motion to strike out some of the causes of a demurrer, and the motion was denied. Neither the point decided, nor the reasoning of the Court seem to have any bearing upon the question under consideration.

It is true that the answer is bad in form, but it contains the substance—clearly and distinctly alleged—of two separate grounds of defence. Shall the Defendants take advantage of their own error? The Plaintiff has waived it, and the authorities cited go very far in sustaining him. See also 1 *Chitty's Pleadings*, 359, and the cases there cited; also, *Howard vs. R. R. Company*, 5 *How. P. Rep.* 296: in which Mr. Justice SILL held *in effect* that, though an answer and demurrer to the same cause of action is irregular in practice, yet the irregularity may be waived by the Plaintiff. A different ruling in questions of this kind must give the cause to the party committing the error, on account of the very error which he has committed. He makes an informal pleading—complains that the opposite party has waived the informality, and joins his cause, notwithstanding the merits fully appear and are against him. This position cannot be sustained.

Again, the objection should have been taken by motion to strike out the demurrer. See *Manchester vs. Storrs, Slocum vs. Wheeler*, and *Cobb vs. Frazer*, before cited; also *Amendments to Revised Statutes*, Sec. 70, on page 9.

The remaining question in this case is, whether the Defendants (Plaintiffs in Error) acquired a lien upon the goods in question to the extent of their advances to the steamboat James Lyon. The goods are alleged in the answer to have been delivered to one J. B. Gilbert, master of the steamboat Falls City, at Pittsburgh, "to be transported for Upton to the City of St. Anthony, or to the highest point on the Mississippi River attainable between the City of St. Paul and the said City of St. Anthony." The answer shows that the contract was never fulfilled, and fails to give any reason why it was not. No lien could attach to the goods by virtue of an undertaking not performed, even in favor of the Falls City steamboat: and neither the James Lyon nor the Defendants could acquire rights through Gilbert which he had not himself. If he had shipped them to St. Paul and then stored them on his own account, under the state of facts appearing from the pleadings in this cause he could not have retained them on account of any lien acquired by by a partial performance of his obligation to transport them to the highest point between St. Paul and St. Anthony. The

reason of this is so strong that the principle needs no support of precedent. The case of *Portland Bank vs. Stubbs et. al.* is in point: see 6 *Mass. R.* 422. PARSONS, C. J. in that case, says: "No freight was due until the voyage was performed and the salt ready to be delivered at Boston, because no impediment to performing the voyage appears. If a ship on her way is prevented from further proceeding, and the shippee will receive his goods, he shall pay a *pro rata* freight: but this is not the case before us." It was held, therefore, that no lien attached: and both the facts in the case and the Opinion are applicable to this. See also *Gross on Law of Lien*, 358.

But, admitting the contract to have been performed and the goods stored in the proper place, still the Defendants acquired no lien for the money advanced. There was no contract to that effect by the Plaintiff, nor any one authorized by him; and they could only acquire it, if at all, by the custom of the place: and such a custom is not alleged in the answer. 11 *Barb. S. C. Rep.* 120, *Gage et. al. vs. Gitner et. al.;* 5 *Taunton*, 645; *Session Laws M. T.* 1855, sec. 22, *p.* 60.

Judgment below affirmed.